IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:17-MJ-2000-KS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| BENJAMIN I. HUBERT, | ) | |
| Defendant. | ) | |

A non-jury trial was held in this matter on January 31, 2018, on a one-count criminal information charging Defendant, Benjamin I. Hubert, with driving while impaired on the Fort Bragg Military Reservation on November 4, 2017, in violation of 18 U.S.C. § 13, assimilating N.C. Gen. Stat. § 20-138.1. Cpt. Rachel O. Arment, Special Assistant United States Attorney appeared on behalf of the government; Defendant was present and represented by David T. Courie, Sr., of Beaver, Courie, Sternlicht, Hearp & Broadfoot, P.A.

At trial, the government presented the testimony of Investigator James Seifert (Seifert), a military police officer with the Fort Bragg Provost Marshal Office (PMO). Based upon Seifert's testimony, the court finds the following facts.

I. **Factual Findings**

On November 3, 2017, the PMO and the Fayetteville, North Carolina, Police Department conducted a checkpoint on the northbound lanes of All-American Expressway between I-295 and All-American Access Control Point 5, an area within the Fort Bragg Military Reservation. The checkpoint procedures were contained in a memorandum, which set forth the date, time, location,

and purpose of the checkpoint.[1] Officers conducting the checkpoint met at the Fort Bragg Law Enforcement Center on November 3, 2017, at 5:00 p.m., and a briefing was held at 7:00 p.m. The checkpoint was conducted from 10:00 p.m. on November 3, 2017, until 3:00 a.m. on November 4, 2017.

A patrol car was present at the checkpoint with its emergency lights activated, and a sign was posted informing drivers that a checkpoint was ahead. Vehicles approaching the checkpoint were "funneled" into one lane with officers positioned every ten to fifteen feet. The officers were instructed to check for drivers' licenses and vehicle registrations and to look for signs of impairment, including an odor of alcohol, red/glassy/bloodshot eyes, slurred speech, inconsistent statements, and the presence of nightclub wristbands. Drivers who complied with the instructions and did not exhibit signs of impairment were cleared through the checkpoint. Those exhibiting signs of impairment were asked to exit their vehicles, at which time an officer would move the vehicle to "the staging area." Those suspected of drinking were asked to submit to a portable breath test. If a driver refused or the sample tested above the legal limit, the individual was detained. A BATMobile, equipped with an intoxilyzer, was present on site for processing individuals charged with impaired driving.

Defendant was stopped at the checkpoint at approximately 2:18 a.m. on November 4, 2017. Seifert had been checking the vehicle ahead of Defendant's when he turned around and saw other officers speaking with Defendant. The area was well lit, and Seifert had a clear view of Defendant.

---

[1] A copy of the memorandum was produced to defense counsel at trial but was not offered into evidence at trial.

He noticed that Defendant was wearing a wristband and had red, watery, bloodshot eyes. Seifert testified that Defendant "just appeared impaired."

Defendant objected to Seifert's testimony concerning the stop of Defendant's vehicle and the events ensuing thereafter. Defendant argued that the government had not met its burden of demonstrating the constitutionality of the checkpoint.

## II. Analysis

### A. Fourth Amendment Standard

The Fourth Amendment guarantees the right of the people to be secure against unreasonable searches and seizures "of their persons, houses, papers, and effects." U.S. Const. amend. IV. "Temporary detention of individuals during the stop of an automobile by the police, even if only for a brief period and for a limited purpose, constitutes a 'seizure' of 'persons' within the meaning of this provision." *Whren v. United States*, 517 U.S. 806, 809–10 (1996). "Thus, stopping a vehicle at a checkpoint constitutes a seizure of a person within the meaning of the Fourth Amendment." *United States v. Brugal*, 209 F.3d 353, 356 (4th Cir. 2000).

With certain limited exceptions, "[a] search or seizure is ordinarily unreasonable in the absence of individualized suspicion of wrongdoing." *City of Indianapolis v. Edmond*, 531 U.S. 32, 37 (2000). Roadblocks or checkpoints are one such exception. "The reasonableness of checkpoint stops . . . turns on factors such as the location and method of operation of the checkpoint, factors that are not susceptible to the distortion of hindsight, and therefore will be open to post-stop review notwithstanding the absence of a warrant." *United States v. Martinez-Fuerte*, 428 U.S. 543, 565–66 (1976).

The constitutionality of a traffic checkpoint depends upon the primary purpose of the checkpoint and its reasonableness. *United States v. Henson,* 351 F. App'x 818, 820 (4th Cir. 2009). A checkpoint whose primary purpose is general crime prevention is not permissible; however, a license or sobriety checkpoint aimed at promoting roadway safety comports with the Fourth Amendment if reasonable based upon the particular circumstances. *Id.*

To determine the reasonableness of a checkpoint, the court must weigh "the gravity of the public interest sought to be advanced and the degree to which the seizures do advance that interest against the extent of the resulting intrusion upon the liberty interests of those stopped." *Brugal*, 209 F.3d at 356.

### B.   Checkpoint's Purpose & Reasonableness

There is no question concerning the purpose of checkpoint at issue here. The testimony presented at trial established that the purpose of the checkpoint was consistent with the government's interest in ensuring the safe and legal operation of motor vehicles on its roadways. Thus, the government has presented sufficient evidence to demonstrate the validity of the checkpoint's purpose.

However, the government failed to present evidence demonstrating the reasonableness of the checkpoint. While there appears no issue concerning the visibility of the checkpoint or the date, time or location of the checkpoint, Seifert's testimony did not demonstrate that the checkpoint was operated in a systematic manner consistent with the Fourth Amendment. *See Delaware v. Prouse*, 440 U.S. 648, 663 (1979) (checkpoint stops conducted upon unbridled discretion of police officers are unreasonable). Seifert testified that cars were funneled into one lane, with officers positioned every ten to fifteen feet due to the length of the line of cars. He stated that drivers of the stopped vehicles were asked for their licenses and registrations but did not indicate how the officers

4

determined which cars to stop. Accordingly, Defendant's objection to testimony concerning the checkpoint stop of Defendant must be sustained.

This 31st day of January 2018.

_____
KIMBERLY A. SWANK
United States Magistrate Judge